AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Adalberto Garcia, being duly sworn, depose and state that:

INTRODUCTION

1.     I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for over a year.  I graduated from the DEA Special Agent Academy in 2019.  Prior to that, I was employed as a Police Officer with the Nashua, New Hampshire Police Department for over eleven years.  For approximately four years, I was assigned to the Detective Bureau.  For three of those years, I was assigned to the Nashua Police Department Drug Unit.  While working in the drug unit, I was primarily assigned to the DEA High Intensity Drug Trafficking Area Task Force in the Manchester, New Hampshire District Office ("MDO"), where I was deputized as a DEA Task Force Officer.  Since becoming a Special Agent with DEA, I have been assigned to the DEA Cross Border Initiative Task Force ("CBI") located in Massachusetts.  In addition to the DEA academy, I have attended narcotic and criminal investigation training classes put on by the New Hampshire Police Standards and Training Council, the DEA, and the Nashua Police Department. My duties and responsibilities include the investigation of federal crimes, including violations of 21 U.S.C. §841(a)(1).

2.     I have received significant training in the field of narcotics enforcement and investigations. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs.  Through my training, education, and experience, I have become familiar with the manner in which drug distribution organizations conduct their illegal activities, including

1

purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations use various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses." I also am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, pager messages, and other means to facilitate their illegal activities.

## PURPOSE OF AFFIDAVIT

5.      I submit this affidavit in support of an application for a criminal complaint alleging that on February 4, 2021, Juan Gabriel Bautista Vargas ("BAUTISTA") possessed with intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A)(vi).

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that BAUTISTA has violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi) (possession with intent to distribute 400 grams or more of fentanyl).

7.      As part of my duties, I am currently participating in an investigation into the criminal activity of BAUTISTA. I am familiar with the facts and circumstances of this investigation, and I have received information from a variety of sources, including but not limited to other law enforcement officers and agents, and my personal review of records and reports relating to the investigation.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, among other things. This affidavit is intended to show that there is probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

9.      On February 4, 2021, at the direction and under the supervision of investigators, a confidential source ("CS") sent a text message to telephone number 857-423-0207 (the "0207 Phone") for purposes of arranging a purchase of fentanyl. CS was cooperating with investigators after being found in possession of a large quantity of various controlled substances. CS cooperated

in hopes of receiving leniency in the charging and/or sentencing for this conduct. CS may be willing to testify. CS told investigators that the user of the 0207 Phone has supplied CS with fentanyl in the recent past. All of the following text communications were conducted in English and preserved.

   10. In particular, at approximately 3:50 p.m. CS sent a text message to the 0207 Phone asking, "Can I see you, I have what I owe you." CS was asking to see his/her supplier for purposes of obtaining more fentanyl, and explaining that s/he had the money owed to the supplier from a prior delivery of fentanyl provided to CS on consignment. The user of the 0207 Phone responded, "OK, I'm just in a hurry, I have to pay 22 thousand," which investigators believe referred to money the user of the 0207 Phone owed to his supplier up the distribution chain. CS asked, "What do I owe you?" and the user of the 0207 Phone responded, "7450." CS explained to investigators that "7450" referred to $7,450, which, based on my training and experience, I know to be consistent with the street price of approximately 500 grams of fentanyl. The user of the 0207 Phone asked, "Do you want me to send it to you right now….are you in the same?" CS reported to investigators that s/he understood the user of the 0207 Phone to be asking if CS wanted the fentanyl delivered immediately ("right now"), and whether CS was located at the same address as the last fentanyl delivery ("are you in the same?"). CS confirmed that s/he wanted the delivery now, and provided the user of the 0207 Phone with CS's new address, a hotel room in Boston. After several logistical messages confirming the timing of the delivery, at approximately 6:11 p.m., the user of the 0207 Phone notified CS that their runner who would deliver the fentanyl had arrived at the hotel. The user of the 0207 Phone asked CS, "What room are you in?" and CS responded with the room number at approximately 6:17 p.m.

11. At approximately 6:18 p.m., investigators conducting surveillance of CS's hotel room observed the defendant, BAUTISTA, arrive outside CS's hotel room. BAUTISTA was the only individual in the area of CS's hotel room at this time, which was at the end of a hallway on the 9th floor. Investigators approached BAUTISTA and told him they knew why he was there, and a Spanish-speaking agent read him his <u>Miranda</u> rights in his native language of Spanish. BAUTISTA executed a written <u>Miranda</u> waiver, again in Spanish. BAUTISTA provided an identification card bearing his photograph and his name from the Dominican Republic. Investigators pat-frisked BAUTISTA and felt a large bulge in his jacket and located a large heat-sealed clear bag containing a light brown powder inside his jacket in a pocket. The bag weighed approximately 505 grams with the packaging. BAUTISTA told investigators, in Spanish, that he was sent to deliver the approximately "500" grams of "fentanyl" to "[CS's first name]"[1] for "$7,500." BAUTISTA was arrested and taken into state custody overnight.

12. A TruNarc field test of the substance was inconclusive, but, based on my training and experience, the color and consistency of the powder, the price, and BAUTISTA's admissions, I believe the substance likely contains fentanyl.

//
//
//
//
//
//
//

---

[1] BAUTISTA provided CS's true first name, which I am omitting to protect CS's identity.

13.  Based on the foregoing, there is probable cause to believe that, on February 4, 2021, BAUTISTA possessed with intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A)(vi).

*[signature]*
Adalberto Garcia
DEA Special Agent

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1, this 5th day of February, 2021.

*[signature]*
HON. MARIANNE B. BOWLER
United States Magistrate Judge